# IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF ARKANSAS

Curtis J Neeley Jr., MFA

v

Federal Communications Commission,
Microsoft Corporation,
Google Inc.

Plaintiff

CASE NO. 12-5208

Defendants

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

OCT 0 2 2012

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

### AMENDED COMPLAINT FOR VIOLATIONS OF PRIVACY RIGHTS AND FAILURE TO REGULATE SAFETY FOR SIMULTANEOUS WIRE AND RADIO COMMUNICATIONS AS WELL AS VIOLATION OF THE EXCLUSIVE RIGHT TO CONTROL CREATIONS FOR A TIME PROTECTED BY 42 USC §1983.

The Plaintiff, Curtis J. Neeley Jr., MFA, respectfully states a complaint for violations of privacy and presentation of the Plaintiff in simultaneous **wire and radio** communications in a false light by internationally distributing indecent artwork creations publicly that are personal "*sins*" sought maintained privately. The Federal Communications Commission fails to protect Plaintiff's privacy on interstate and foreign communication by **wire and radio** and fails to protect the safety of communications for any citizens, including the Plaintiff or Plaintiff's children, as required by law. These wrongs are further explained for each Defendant as follows concisely labeled I-V. Trail by jury is demanded.

## I. Federal Communications Commission Failure to Protect Wire Communications

1.   The Supreme Court mislabeled the simultaneous usage of computers to facilitate wire communications "*a wholly new medium*" in *ACLU v Reno*, (96-511). This plain error has not yet been addressed by Congress but indecent **wire and radio** communications were never determined by Congress or the Supreme Court to be exempt from regulation by the Federal Communications Commission (FCC). See *FCC v Fox*, (10-1293)(2012)

2.   The clear intention of the Communications Act of 1934 was regulation of all **distant communications**. The *ACLU v Reno* mistake causes the portions remaining from the Communications Decency Act of 1995 to diametrically oppose decency or preempt responsibility for "*indecent*" simultaneous **wire and radio** communications instead of the promotion of decent distant communications.

3.   The FCC is malfeasant for failing to intervene or otherwise seek to prevent 47 USC §230(c)(1)[1] from repeated interpretation by courts counter to: 1) the Constitution, 2) the title of the indecency excusing §230, and 3) the mission of the FCC given in 47 USC §151[2] wherein Congress created the FCC and gave the agency clear regulatory authority over distant **wire and radio** communications.

4.   The continual display of indecent art to unidentified parties including the Plaintiff's children and other unidentified pornography consumers over **wire and radio** communications is allowed by the FCC's refusal to perform the mission of protecting the safe use of interstate and world-wide **wire and radio** communications used in commerce as listed clearly in 47 USC §151 in plain English text as can be read in the footnote below.

---

[1] (c) Protection for "Good Samaritan" blocking and screening of offensive material
(1) Treatment of publisher or speaker
No provider *or user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider

^^^^ *47 USC §230(c)(1) above sought to protect wire communications connectivity providers like telephone wire communications providers were protected from delivering though unaware.*

[2] 47 USC §151 - For the purpose of regulating interstate and foreign commerce in communication by **wire and radio** so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nation-wide, and world-wide **wire and radio** communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of **wire and radio** communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in **wire and radio** communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

- *Highlighting added throughout this complaint for "**wire and radio**" to prevent continued ignoring.*

2

5.   There is no simple administrative procedure to address this malfeasance for citizens beyond those already tried for <u>years</u> by the Plaintiff. These including service of the general complaint by certified mail in 2009 and electronically "filing" this complaint repeatedly via FCC's Electronic Comment Filing System (ECFS) as can be seen by the public searching the <fcc.gov> website as seen evidenced repeatedly in exhibit "A". Jurisdiction was vested in this District Court per 28 USC § 2675(a) after failure beyond six months to resolve this complaint.

6.   Kim Mattos, of the FCC, advised the Plaintiff that decency regulation of interstate **wire and radio** communications was beyond the jurisdiction of the FCC and claimed "*everyone at the FCC*" was aware of this complainant and this complaint.

7.   The *FCC v Pacifica*[3] ruling from 1978 has been substituted wholly for the 47 USC §151 rational for regulation of distant communications in plain error by the FCC when simultaneous **wire and radio** communications displaced common usage of facsimile and telegraph wire communications. The FCC regulated **wire and radio** communications better when telegraph wires were the only way for near-immediate communication across oceans.

8.   The FCC uses the <u>thirty-four</u> year old *Pacifica* ruling to determine jurisdiction instead of 47 USC §151, in clear error, in order to excuse not regulating the network of computers that replaced telegraph machines as the apparatus connected to wires for interstate and world-wide communications used in commerce.

---

[3]   *FCC v Pacifica* the "landmark" First amendment holding from 1978 with the "*pervasiveness theory*," held that broadcast speech was "*uniquely pervasive*" and an "*intruder*" in the home, and therefore demanded special, artificial content restrictions and relied on the pervasiveness of radio waves and failed entirely to address the pervasiveness of wire communications when simultaneously available by radio as "*interconnected networks*" of wire communications are today though nonexistent in 1978.

3

9. Wire communications described precisely in the Communications Act of 1934 in 47 USC §153 ¶(59)[4] became the worldwide network of computer apparatus connected to either end of wires. These simple facts went unrealized in the *ACLU v Reno*[5] "landmark" mistake of 1996 alleging to discover "*a wholly new medium for human communications*" and failing to recognize a new usage of very old mediums.

10. This Supreme Court error caused simultaneous **wire and radio** communications to become Earth's **wire and radio** venue for utterly unsafe indecent communications despite the rest of the ignored text of 47 USC §151 requiring protection for the safe use of both of these mediums in interstate and world-wide commerce.

11. The FCC fails to protect privacy for this Plaintiff in interstate and world-wide communications. Plaintiff is left protected only by the Constitution and common law despite 47 USC §151 by the malfeasant FCC.

12. The FCC abandoned regulation for the safety of content of **wire and radio** communications despite the plain statutory mission given in 47 USC §151 to protect the safe use of both of these mediums for distant communications used in commerce.

---

[4] (59) Wire communication
The term "wire communication" or "communication by wire" means the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.

[5] *ACLU v Reno* The claim of, "... [i]nternet is a unique and wholly new medium of worldwide human communication", failed to address internet **wire and radio** communications occurring simultaneously on both old mediums and was written early in the days of internet **wire and radio** communications when few understood simultaneous internet **wire and radio** communications to be the new medium independent manner of pervasive distance communications. This was perhaps more confusing to those growing up without internet **wire and radio** communications, smartphones, or nuclear weapons like the Justice writing the *ACLU v Reno* ruling and many reading this though few alive grew up without nuclear weapons. This error becomes more obvious every day and needs to be overruled and will be corrected soon without any doubt by the courts or legislature.

4

13.  The **thirty-four** year old *Pacifica* ruling leaves the FCC using archaic court interpretations of clear statutes to preclude content regulation on simultaneous **wire and radio** despite clear text requiring regulation of distant communications.

14.  The "*landmark*" court error of *ACLU v Reno* allows irresponsible **wire and radio** communication of distant indecency contrary to the 47 USC §151 requirement for the FCC to protect the safe uses of **wire and radio** communication used in commerce.

15.  This cultural error made by the Supreme Court causes simultaneous **wire and radio** communications to be unregulated by law and be given over-broad First Amendment protections without the associated responsibilities for safe communications.

16.  The FCC allowed and allows simultaneous usage of **wire and radio** communications to become patently unsafe and harm this Plaintiff's reputation and privacy as well as more people than live in the Western District of Arkansas and more people than live in the entire United States.

17.  The FCC duty to protect public safety for use of distant **wire and radio** communications generally stopped being protected for wire as television signals generally moved to wires called cables and away from the radio medium.

18.  Regulation allowed for fleeting indecency in broadcast radio television by *CBS v FCC,* (06-3575) is incompatible with indecent images authored by the Plaintiff or associated with the text "curtis neeley" allowed now to be transmitted by unsafe **wire and radio** communications regardless of who placed the indecent content on computers made accessible by **wire and radio** communications without respect to the popular "title" given these medium independent communications. e.g. *interactive network of computers, interwoven network of computers, or interconnected and international network of computers or just simply "inter... + net".*

19. The FCC was created to protect <u>communications</u> by the Communications Act of 1934 five decades before any "*wholly new*" simultaneous **wire and radio** usage of distance communications existed. <u>**No new medium has ever existed** in spite of this **clear mistake**</u>. See the clear English definition of medium.[6]

20. The failure to properly apply 47 USC §153 ¶(59) was done in 1996 by one seventy-seven year old Justice who grew up without fear of nuclear war due to growing up <u>before WWII began</u> and before usage of the first WMD to terrorize Japan was done by the United States.

21. The failure to recognize a new manner for using the centuries old wire medium and calling the new manner for usage of an old wire medium "*a unique and wholly new medium*" was plainly wrong yet was adopted in error by the FCC and not challenged as was and still remains the statutory duty of the FCC.

22. The rapid progress of science and indecent art spread by **wire and radio** communication has allowed overwhelming desires for unregulated indecency consumption to distort laws and lure humanity, including United States Courts and the FCC, into preserving <u>anonymous indecent wire communication</u> where responsibility for indecent **wire and radio** communications is entirely avoided counter to the safe use of indecent **wire and radio** distant communications.

---

[6] **Medium** noun 1. a middle state or condition; mean. 2. something intermediate in nature or degree. 3. an intervening substance, as air, through which a force acts or an effect is produced. 4. the element that is the natural habitat of an organism. 5. surrounding objects, conditions, or influences; environment. ^^ medium. (n.d.). Collins English Dictionary - Complete & Unabridged 10th Edition. Retrieved September 12, 2012, from Dictionary.com website: http://dictionary.reference.com/browse/medium

6

23.  The *ACLU v Reno* error is counter to the Constitution and rule of law and harms this Plaintiff's privacy as well as the safety of all minors and spouses on Earth with access to unsafe yet pervasive simultaneous **wire and radio** communications revealing indecency searching for "curtis neeley" or more well-known indecent art producers by name in a Google Inc or Microsoft Corporation image search.  This is allowed by the FCC to cause harm to this Plaintiff contrary to the mission listed clearly in 47 USC §151 despite years of ignored complaints by the Plaintiff..

24.  Google Inc and Microsoft Corporation indexing copies of indecent content and revealing indecent content locations should always have been penalized as transmitters of indecency due to communicating indecency in different contexts as new content by gathering indecent content and choosing to republish this unsafe indecent content and creating the pervasive lure for unidentified pornography usage for ridiculous profits despite the FCC duty to make **wire and radio** communications safe for interstate and world-wide communications used in commerce.

## II. Inappropriate Text-image Associations Left Harassing by Microsoft Corporation after Advised of Inappropriateness

1.  Microsoft Corporation searches of the indexed network of computers connected to wire and radio communications creates the false appearance the Plaintiff desires or desired anonymous minors to see Plaintiff's indecent creations or other indecency using "curtis neeley" in searches of unsafe simultaneous **wire and radio** communications called "open inter... + net", though perhaps not begun intentionally.

7

2. Microsoft Corporation refuses to halt this association without court orders after requested repeatedly that all indecent images be removed from search results for searches using the text "curtis neeley".

3. Microsoft Corporation advised the Plaintiff that ceasing the text-image association of "curtis neeley" with indecency requires court orders and further admitted noting the Plaintiff's concern about obscene results and violations of the robots exclusions protocol. See exhibits "B".

4. Injunctions requiring disassociating "curtis neeley" text searches from indecent images are now sought regardless of other terms used by unidentified searchers who may be minors or where identities can't be checked by an authority.

## III. Google Inc Reckless Use of Wire Communications to Violate Privacy

1. Google Inc attributed and continues to associate "curtis neeley" with the presentation of indecent photographs placed by various random parties world-wide. There are insufficient safeguards used on these indecent Google Inc image presentations for prevention of anonymous viewers including minors, Muslims, and the Plaintiff's children from viewing indecent images returned using "curtis neeley" in searches of computers networked by **wire or radio** despite the ease of preventing anonymous searches now for decades but not done recklessly to increase profit.

8

2. The Plaintiff once sought adult feedback on creations of indecent art and sold indecent art from two websites providing filtration so that visitors to these websites were not exposed to indecent art unless disclosing identity via verifiable email wire communications as should be ordered required by law now by the FCC.

3. Google Inc formerly and currently bypasses the filtration described above <u>after advised of this wrong.</u> Google Inc does this to continue the display of images otherwise shown only to identity providing viewers for profit. <Google.com> searches for "curtis neeley" limited to <deviantArt.com> revealed and still reveal artwork declared not safe for work (NSFW) **<u>after Google Inc was advised of this wrong repeatedly</u>**.

4. The undesired return of artwork, declared by the Plaintiff to be indecent, to anonymous persons was documented repeatedly and can be seen now despite most indecent images being removed entirely from <deviantArt.com> years ago and years of vociferous advisements to Google Inc and hundreds of Federal Court filings.

5. The bypassing of filtration by Google Inc continues for this Plaintiff and all users of <deviantart.com> seeking the identity requirement for viewership of art marked as indecent or "not safe for work" (NSFW).

6. The undesired republication of indecent images from two websites presented material publicly to ANYONE that was clearly not intended for presentation to minors invalidating all 17 USC §107 claims. Google Inc continues now violating common law and constitutionally protected personal privacy and harasses the Plaintiff with fraudulent use of computers bypassing identity filtration and continues returning art labeled indecent in searches for "curtis neeley" to minors in the **wire and radio** mediums as allowed to continue for profit though rendering **wire and radio** communications patently unsafe.

# IV. The "Google Inc Books" 2010 Privacy Violation

1.  Google Inc books attributed the Plaintiff accurately but inappropriately to three additional '*figurenude*' photographs via interstate and world-wide **wire and radio** communications after Google Inc scanned three images by the Plaintiff from one book from a New York library **against the Plaintiff's known desires**. This was done after March 7, 2010 despite spending hundreds of thousands in legal fees against this Plaintiff to continue this for profit in addition to the millions spent in legal fees or offered artists in New York to revise copy[rite] law and claiming to rewrite federal laws in United States Courts for the Southern District of New York.

2.  This negligent and harassing action by Google Inc was done while litigating against this Plaintiff for undesired redisplay of Plaintiff's indecent artwork and caused this Plaintiff further harm by creating another three harassing invasions of privacy protected by common law and the Constitution. These were violation of exclusive rights and were unauthorized republication of book artwork in the **wire and radio** mediums. Yes, Publication was once done by Plaintiff intentionally but only in the paper book medium. Viewing these indecent image publications required an encounter with the physical book and not simply typing "curtis neeley" into a computer connected to wires networked anywhere on Earth and using Google Inc "book searches".

3.  Google Inc presented Neeley in a false light by scanning indecent visual art from one book and making unauthorized world-wide republications of this indecent art making this indecency easy to encounter before anonymous unidentified minors while in public schools or anywhere on Earth.

4. This republication to minors was thousands of miles from the book in New York. The Plaintiff's teen daughter or other remote searchers would otherwise have never encountered this particular indecent visual art in a book on photographic art in New York.

5. This was a fundamental violation of privacy by Google Inc that is constitutionally protected and is protected by common law in Arkansas according to the opinion of the Arkansas Attorney General. See attached Arkansas Attorney General Opinion No. 96-161. See exhibit "C". For common law tort grounds see *Dunlap v. McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984). For constitutional grounds see *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989).

6. Congress agreed this manner of privacy violation was forbidden by Treaty in 1988 and again in 1994. Unwavering Berne Compact compliance was ruled constitutional on January 18, 2012 in *Golan v Holder*,(10-545) despite self-serving *amicus* opposing these finding by Google Inc.

7. The fair-use exceptions of 17 USC §107 to the exclusive rites for using visual contributions to books have been <u>unconstitutionally vague</u> since 1976 when §107 was created. Fair-use made it impossible for common people to understand or agree on this law as is required for all laws.

8. Besides unconstitutional vagueness; §107 violates the accepted Treaty of the "Berne Convention for the Protection of Literary and Artistic Works" despite the recent *Golan v Holder* ruling calling the "Berne Compact" the copy[rite] law accepted by Congress repeatedly.

9.   The 17 USC §107 claim does not consider unwanted additional publicity and even world-wide publicity for reformed indecency authors therefore violating privacy and the right to remain silent about past creations of indecency without criminal convictions like sex offenders or other such rational for requiring public registry of past indecent actions and thereby violating this Plaintiff's privacy.

10.   The fair-use exceptions of 17 USC §107 to the publishing rite for indecent art has never been fair and have always been unconstitutional. **<u>Any name-associated usage whatsoever</u>** of indecent art causes undesired expanded republication and violates the right to be secure in the person and remain silent and not disseminate prior indecent creations.

## V.   FCC's Decency Regulation Malfeasance

1.   Protection of anonymous citizens from exposure to indecent **wire and radio** communications is a legitimate state interest mostly allowed unregulated for decades though ordered protected by 47 USC §151. It is absolutely absurd and malfeasant that the FCC allows 47 §230(c)(1) to be repeatedly interpreted by Federal Courts diametrically opposed to the clear intentions and title of the Communications Decency Act and the "Good Samaritan" section itself 47 §230(c)(1).

2.   The law intended by Congress to promote communications decency instead became the law cited by the FCC, this District, and Google Inc to traffic indecent art and defamatory communications including indecent art once created by the Plaintiff before simultaneous **wire and radio** communications were disguised as the "*interactive network or interconnected network of computer networks* and christened the **"inter"+ net** by *ACLU v Reno* (96-511) in clear error as could not be made more clear or be pointed out more vociferously than is done herein.

3. The responsibilities for production, consumption, and trafficking of indecent content or defamatory content is unconstitutionally waived for all laws by 47 USC §230(c)(1) allowing <u>utterly unregulated speech</u> in violation of the clear natural right to be free from defamation, computer frauds, and privacy violations supported by numerous State laws as well as 47 USC §151. This United States law is entirely ignored by the FCC as could not be more clearly wrong and could not be brought more squarely before United States Courts than is done herein.

# CONCLUSION

1. Plaintiff seeks only common sense regulation of **wire and radio** communications. Google Inc Counselor Michael Henry Page Esq advised that Google Inc has a clear institutional interest in preventing identification of searchers looking for indecency before Honorable Erin L. Setser in the United States Court for the Western District of Arkansas on Dec 10, 2010.

2. Google Inc and Microsoft Corporation should pay compensatory and punitive monetary damages as the jury feels is just. The damages ordered paid by Defendant Google Inc should be heavily impacting percentages of gross profits for the last three years due to ignoring vociferous advisements regarding unwanted indecent image-text associations and even expanding these violations while facing the Plaintiff in Federal Court.

3. This prayer seeks only the "right thing" being done and thereby finally establishing pervasive **wire and radio** communications as the borderless medium independent venue <u>safe for unsupervised children and pornography addicts</u> and for

free speech <u>including</u> speech not the least bit acceptable for unsupervised children but protected for identified <u>responsible</u> adults willing to identify as contactable adults so ages may be checked by *adult claim verification office* of the FCC or the owner of the computer or other devise used to view **wire and radio** communications of indecency.

4.  The FCC should protect minors and pornography addicts from harmful simultaneous **wire and radio** communications. This protection is an ignored duty related to free speech, privacy, authors' rights, and regulation of pervasive public <u>**wire and radio**</u> communications. The wire medium has been unregulated and left unprotected since 1978 or <u>long</u> before the simultaneous use of these two mediums was called "*a unique and wholly new medium for human communications*" in egregious error that could not be more clearly wrong or be brought more squarely to court.

5.  Indecent adult-only communications may continue via **wire and radio** communications but the Plaintiff prays these be prohibited for anonymous persons for indecent communications as has been trivial now for decades. The identity requirement for viewing indecency is supported for even controversial subjects by *Doe v. Reed*, (09-559) when legitimate state interests are served.

6.  The protection of unsupervised minors or pornography addicts from exposure to anonymous viewership of indecent pervasive **wire and radio** communications is the legitimate state interest ignored now for decades despite laws requiring regulation of interstate and world-wide **wire and radio** communications to protect safety.

7.  All spouses and all parents on Earth have been left exposed to harm by access to unsafe communications by both corporate Defendants. Roughly <u>half the damages awarded will be paid in taxes</u> to the United States, offsetting taxes though this is not a class action.

8.  The jury should consider this fact and consider an award large enough to impact the United States budget or <u>eleven-billion six-hundred million</u> from Google Inc or roughly twenty percent of gross profits while facing this Plaintiff in United States Court and seeking to continue unsafe indecent content trafficking to the anonymous as is improper and clearly against the law and has been for decades.

9.  The scourge of pornography on families will become treatable soon after anonymous access to indecent artwork is prohibited by the FCC as is now sought demanded ordered by an injunction of the District Court. This regulation will quickly end all simultaneous **wire and radio** child pornography and quickly establish SAFE distant communications once provided by the Communications Act of 1934.

10. Defendant Microsoft Corporation responded to the Plaintiff and demanded the court order now sought though Microsoft Corporation did not oppose the Plaintiff in court before this complaint was filed like Defendant Google Inc did vociferously resulting in moral copy[rite] (17 USC §106A) being ruled to not apply to simultaneous **wire and radio** communications.

11.     Google Inc made it a company policy for years to protect the continued delivery of indecency to the unidentified and thereby created a market for unsafe indecent **wire and radio** communications using the oldest lure given to humanity and offering an increase of knowledge. The pervasive lure for knowledge was presented by Google Inc through knowledge delivered on simultaneous **wire and radio** communication networks instead of fruit left hanging on one "*forbidden tree*"[7] in a garden.

12.     Defendant Google Inc spent hundreds of thousands in legal fees and adamantly refused to stop the trafficking Plaintiff's indecent art and other indecent art to children and pornography addicts for profit while facing the Plaintiff in United States Courts. Microsoft Corporation admitted being made aware of obscene text-image associations and continued these for profit as well.

13.     This District Court should invalidate all usage of 17 USC §107 fair-use to violate privacy while trespassing on private computers and indexing computers uninvited and invalidate 47 USC §230 claims for excusing violations of privacy while violating all other laws.

---

[7] [15] The Lord God took the man and put him in the Garden of Eden to work it and take care of it. [16] And the Lord God commanded the man, "You are free to eat from any tree in the garden; [17] but you must not eat from the tree of the knowledge of good and evil, for when you eat from it you will certainly die."
^^ Genesis Chapter II

[4] "You will not certainly die," the serpent said to the woman. [5] "For God knows that when you eat from it your eyes will be opened, and you will be like God, knowing good and evil."
^^ Genesis Chapter III

^^^From chapter II and III of Holy Bible, New International Version®, NIV® Copyright © 1973, 1978, 1984, 2011 by Biblica, Inc.® Used by permission. All rights reserved worldwide.

14. 47 USC §230 was used by Defendant Google Inc to ignore advisements of obscene or indecent text-image associations by the Plaintiff as well as unsafe speech sought censored recently by the White House in the interest of unregulated free speech by Google Inc. It is well past time for this District Court to order regulation of all communications used in commerce in the Western District of Arkansas by the FCC since unconstitutional laws like 47 USC §230 can preempt absolutely no other laws.

15. This will not be resolved finally without scores of *amici* filed as the District Decision is appealed to the Supreme Court. This District Court has authority to resolve this complaint by injunctions demanding regulation of **wire and radio** communications entering or leaving the Western District of Arkansas and findings of liability for Google Inc and Microsoft Corporation with a jury instructed to determine the award paid by each Corporate Defendant.

16. Unsafe **wire or radio** communications should be ordered prevented by the FCC in the Western District of Arkansas by an injunction since jurisdiction was vested here by 28 USC § 2675(a)[8] due to the years of failing to address this complaint. This demand will end the careers, political or otherwise, of anyone even acknowledging this complaint including all media and everyone else notified. This is the primary rational for United States Courts remaining beholden only to law.

17. The Supreme Court was wrong in *Susan B. Anthony v United States* (1873) and the levying a fine for voting while female was ignored by Susan B. Anthony though **preceding women's suffrage by forty-eight years.**

---

[8] The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

17

18. The Supreme Court was just as wrong in *ACLU v Reno* (1996) as the Supreme Court was in *Susan B. Anthony v United States* (1873). This error has been used by Google Inc, Microsoft Corporation for ridiculous profits and the FCC has used *ACLU v Reno* (1996) to allow unsafe free speech counter to 47 USC §151.

19. Angry Muslims have responded inappropriately to unsafe free speech allowed to be delivered by wire and radio communications by the malfeasant FCC counter to the Communications Act of 1934.

20. Unsafe speech made in the Plaintiff's past and now repeated by various parties uninvited, including Microsoft Corporation and Google Inc, must not be allowed to continue in the Western District of Arkansas or one of the first states to use cable television wires left unregulated by the FCC due to the local terrain.

Respectfully Submitted,

Curtis J Neeley Jr, MFA

Curtis J. Neeley Jr.
2619 N Quality Lane
Suite 123
Fayetteville, AR 72703